IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT GUADAGNO,                   :
                                   :
            Plaintiff,             :          CIVIL NO. 1:11-CV-0858
                                   :
      v.                           :          Hon. John E. Jones III
                                   :
WARDEN CRAIG A. LOWE, *et al.*,    :
                                   :
            Defendants.            :

## MEMORANDUM

July 21, 2011

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

On May 5, 2011, Plaintiff Robert Guadagno ("Plaintiff" or "Guadagno"), an inmate presently confined at the Pike County Correctional Facility ("PCCF") in Lords Valley, Pennsylvania, initiated the above civil rights action *pro se* by filing a Complaint under the provisions of 42 U.S.C. § 1983.  (Doc. 1.)

After screening his Complaint under the provisions of 28 U.S.C. § 1915, in a Memorandum and Order dated May 19, 2011, we dismissed the Complaint for failure to state a claim upon which relief may be granted without prejudice to Guadagno's ability to file an amended complaint within twenty-one (21) days.  (Doc. 7.) Guadagno's Amended Complaint, filed on June 1, 2011, is before us for screening. (Doc. 8.)  For the reasons set forth below, the Amended Complaint will be dismissed

for failure to state a claim upon which relief may be granted.  28 U.S.C.

§ 1915(e)(2)(B)(ii).

## I.     ALLEGATIONS OF AMENDED COMPLAINT

In his Amended Complaint, Guadagno names as Defendants the following

employees of the PCCF in their official capacities: Warden Craig A. Lowe, Lieutenant

Wincovitch; Sergeant Hugo DeMarco; and Corrections Officer Barry.  (Doc. 8 at 1.)

He alleges that his constitutional rights, including his rights to due process and to be

free from cruel and unusual punishment, were violated when false misconduct charges

were filed against him and when, after he was found guilty of those charges, he was

confined to the Restricted Housing Unit ("RHU").

At the outset of his Amended Complaint, Guadagno addresses his efforts to

exhaust administrative remedies.  He states that he filed requests for grievances with

Lieutenant Wincovitch and with Warden Lowe and was denied.  (*Id.* ¶ 1.)  Guadagno

states that he has been threatened by the administration not to file any further requests

or he will be reprimanded for misuse of county property and sanctioned to the hole,

where he has been since he filed the Complaint in this action.  (*Id.* at 2 ¶ 5.)  Attached

to his Amended Complaint is a copy of an inmate request form he submitted on May

12, 2011 requesting all videos and documentary evidence pertaining to his May 3,

2

2011 disciplinary board hearing, which he wished to have saved as evidence for the instant civil action.  (*Id.* at 13.)  The response of the same date advises Guadagno that he does not need to put in a request for this and not to do it again or he will be charged with misconduct for misuse of county property and paperwork.  (*Id.*)

However, Guadagno states that he filed an appeal with the Warden from the misconduct at issue.  (*Id.* at 2 ¶¶ 4, 8.)  Attached to his Amended Complaint are copies of documents relating to his May 3, 2011 disciplinary board hearing and his appeal from the finding of guilt.  These documents include a copy of the Disciplinary Board's Action, which reflects that, following a hearing on May 3, 2011, the Board took the following action:

> Based on the fact that you are witnessed exiting cell 3 and entering cell 1 the board finds you guilty of class II #19 (Being in an unauthorized area). This is substantiated by video surveillance.
>
> Based on the fact that you were observed by Officer Barry cutting another inmates [*sic*] hair and seen on video surveillance shaking out your shirt when you testified that you were tucking in your shirt the board finds you guilty of class II #27 (Misuse of razor or shaver (cutting hair anywhere in housing unit).

(*Id.* at 9.)  The Disciplinary Board Action also indicates that Guadagno was sanctioned to 14 days in the RHU with a scheduled release date of May 17, 2011. (*Id.*)

3

Also attached to the Amended Complaint is a copy of a Disciplinary Board Review dated May 13, 2011 indicating that Guadagno's sanction had been suspended. (*Id.* at 10.)  A copy of the Warden's May 13 response to Guadagno's May 9 request for a grievance also is attached to the Amended Complaint.  (*Id.* at 11, 14-16.)  In the response, the Warden states that the sanction was suspended pending the outcome of an investigation.  (*Id.*)

Guadagno makes the following allegations in his Amended Complaint:

Guadagno was found guilty at his disciplinary board hearing even though he claims that the video tapes he reviewed were inconclusive to finding him guilty of any violations that govern the PCCF.  (*Id.* at 2 ¶ 6.)  He was sanctioned with fourteen (14) days in the RHU where he is shackled to take a shower and is not able to make phone calls other than legal-related phone calls.  (*Id.* ¶ 7.)

Officer Barry, who was the corrections officer on Guadagno's block at the time of the incident in question (*see id.* at 8), was on vacation at the time of his disciplinary hearing, but when he arrived back, Guadagno confronted him as to why his reports were changed, and he informed Guadagno that he was "made to lie and perjure himself by Sgt DeMarco."  (*Id.* ¶ 9.)  Barry informed him that Sergeant DeMarco made him change his reports three times in order to ensure the outcome of the

4

disciplinary hearing.  (*Id.* at 3 ¶ 11.)  Guadagno then filed another request with the Warden for a grievance explaining what Officer Barry said, but he never received a grievance, which is a violation of his right to due process.  (*Id.* at 2 ¶ 10.)  Officer Barry informed Lieutenant Campos that he was forced to falsify a legal document because Sergeant DeMarco had it out for Guadagno from a "previous engagement." (*Id.* at 3 ¶ 12.)  But, when Lieutenant Campos presided over Guadagno's disciplinary hearing, he would not listen to the facts of his defense or the fact that a video showed that Guadagno was innocent.  (*Id.* ¶ 13.)  He also neglected the testimony of Guadagno's witnesses.  (*Id.*)

Three PCCF employees also were part of Guadagno's D-Board, and one of the officers told Guadagno that two of the employees found him not guilty, but Campos overrode their decision.  (*Id.* ¶ 14.)

Officer Barry was subject to a disciplinary board action for telling the truth, which was retaliation because he went against his supervisor, Sergeant DeMarco.  (*Id.* ¶ 15.)  He has indicated his willingness to testify for Guadagno.  (*Id.* ¶ 16.)

On May 13, 2011, Guadagno received a response from the Warden from his appeal of the guilty finding informing him that his sanction has been suspended pending an internal investigation.  (*Id.* ¶ 17; at 14-16.)

Guadagno has been in maximum custody ever since he was found guilty at the disciplinary board hearing.  (*Id.* at 4 ¶ 18.)  After he filed his previous lawsuit, he was placed on a high classification unit with murderers and rapists even though he is being confined for shoplifting.  (*Id.*)  As of May 20, 2011, he is still "locked in a box, which he states is  "due to retribution" for having filed a Complaint with this Court.  (*Id.* ¶ 19; at 5 ¶ 28.)  He also alleges that he has suffered adverse effects in that he has had to shower in shackles, he must be escorted in shackles, he has minimum recreation time, "the lights come on at 6:30AM and they go off at 9:00," and he has only a limited time in the library.  (*Id.* at 5 ¶ 29.)

Sergeant DeMarco still has not been reprimanded for this injustice even though it is a violation for an employee of PCCF to falsify any legal documents.  (*Id.* at 4 ¶ 23.)

Guadagno further alleges that he was engaged in a conversation with an inmate that is protected under the First Amendment at the time he was charged with a misconduct and that the charge of being in an unauthorized area is false because he denies ever being in the other inmate's cell.  (*Id.* at 6 ¶ 30.)

Within his Amended Complaint, Guadagno requests the following relief:

Although he states that Officer Barry is willing to testify in his favor (*id.* at 3

¶ 16), Guadagno names Barry as a Defendant and states that he holds Barry

responsible for falsifying a report and for perjury (*id.* at 6 ¶ 31). He then requests that

this Court find that his constitutional rights have been violated and award him punitive

damages in the amount of $500,000. (*Id.*)

In a section at the end of his Amended Complaint entitled, "Relief", Guadagno

requests that he receive $500,000 in monetary damages for his pain and suffering and

for the violations of his Fifth and Eighth Amendment rights in that he has had many of

his civil rights broken during his incarceration at PCCF. (*Id.* at 8.) He requests that

all parties be reprimanded. (*Id.*) He also requests that Sergeant DeMarco resign from

PCCF before he files another false incident report against another inmate, or even

worse, sets the inmate up. (*Id.*) Finally, he "seeks all punitive damages mentioned

above without prejudice." (*Id.*)

## II.     STANDARD OF REVIEW

Under 28 U.S.C. § 1915(e)(2)(B)(ii), a federal court must dismiss a case

filed *in forma pauperis* if the court determines that the complaint "fails to state a claim

on which relief may be granted." In reviewing the legal sufficiency of a complaint,

the Court must accept the truth of the plaintiff's factual allegations. *Morrison v.

Madison Dearborn Capital Partners III L.P.*, 463 F.3d 312, 314 (3d Cir. 2006). The

controlling question is whether the complaint "alleges enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (rejecting the "no set of facts" language from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Ashcroft v. Iqbal*, - - - U.S. - - - - , 129 S.Ct. 1937, 1949 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (citation omitted).  To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.*

Pro se pleadings are to be construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and pro se litigants are to be granted leave to file a curative amended complaint "even when a plaintiff does not seek leave to amend . . . unless such an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).  However, a complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend.  *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir.

2002).

## III.  DISCUSSION

Guadagno seeks both monetary relief, in the form of $500,000 in punitive damages and $500,000 for pain and suffering, and injunctive relief, in the form of the Court directing that Defendants be reprimanded and that Sergeant DeMarco resign, for an alleged violation of his constitutional rights as a result of the allegedly false misconduct report filed against him, which resulted in his being found guilty and being sanctioned with time in the RHU.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court ruled that a constitutional cause of action for damages does not accrue "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," until the plaintiff proves that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87.

In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court extended the rationale in *Heck* to disciplinary proceedings, holding that the expungement of the

inmate disciplinary proceeding would imply the invalidity of the underlying

disciplinary action: "[t]he principal procedural defect complained of by the respondent

would, if established, necessarily imply the invalidity of the deprivation of his good-

time credits." *Edwards*, 520 U.S. at 646.  Accordingly, an inmate may not bring a

civil rights action for declaratory and injunctive relief related to an inmate disciplinary

proceeding without first challenging and overturning, via appropriate proceedings, the

disciplinary hearing in question.  *Id.* at 646-47.  In *Wilkinson v. Dotson*, 544 U.S. 74,

81-82 (2005) (emphasis in original), the Court explained that "a state prisoner's §

1983 action is barred (absent prior invalidation)- *no matter the relief sought* (damages

or equitable relief), no matter the target of the prisoner's suit (state conduct leading to

conviction or internal prison proceedings)- *If* success in that action would necessarily

demonstrate the invalidity of the confinement or its duration."

     As noted above, Guadagno seeks both monetary and injunctive relief with

respect to his claims arising out of the allegedly false disciplinary charges that were

filed against him and that resulted in his being found guilty and being sanctioned with

time in the RHU.  An award of damages would implicate the validity of the

underlying disciplinary proceedings.  Guadagno cannot state such a claim unless he

can demonstrate that the disciplinary board's decision finding him guilty of the

misconduct charges was invalidated on administrative appeal or through the issuance of a writ of habeas corpus.  Although Guadagno alleges in his Amended Complaint that his sanction was suspended pending an investigation, and provides a copy of the Warden's response to his appeal informing him of this development, where that investigation was ongoing at the time of his filing of an Amended Complaint, he has not made a showing that his disciplinary proceedings have been invalidated through the administrative appeal process.  He also has not indicated the charges were invalidated through the issuance of a writ of habeas corpus.

Consequently, where it is apparent that the disciplinary proceedings at issue have not been determined to be unlawful, we must dismiss Guadagno's claims stemming from those proceedings pursuant to *Heck* and *Edwards*.  We therefore will dismiss the Amended Complaint for failure to state a claim and, because granting leave to file a second amended complaint would be futile, *see Alston*, 363 F.3d at 235, we will direct that this action be closed.  However, to account for the possibility that, upon the completion of the investigation, the disciplinary board's finding that Guadagno was guilty of misconduct could be reversed, our dismissal will be without prejudice to Guadagno's ability to file a motion to re-open this case and for leave to file a second amended complaint upon that occurrence.  An appropriate Order will

11

enter.